AT THE

## GENERAL AND SPECIAL TERMS,

IN PROCEEDINGS UNDER THE

# MECHANICS' LIEN LAW,

PASSED JULY 11, 1851. (a)

---

### EPENETUS DOUGHTY v. DANIEL DEVLIN. (b)

Under the " Act for the better security of mechanics and others," passed July 11
1851, the owner cannot be compelled to pay (including all voluntary payments
made, in good faith, according to the terms of his contract, before the notice of
claim is filed) any greater sum than the contract price. Prior payments, made by
the owner, according to the terms of his contract, in good faith, before the filing of

---

(a) See the " Act for the better security of mechanics and others, erecting build-
ings and furnishing materials therefor, in the city and county of New York." (Laws
of 1851, chap. 513, p. 953.) The reporter has included in this volume all the cases
arising under the act, which have been decided with the concurrence of a majority of
the court, down to November term, 1854.

(b) This case, with *Brien* v. *Clay* and *Lehretter* v. *Koffman*, *post*, and three un-
important decisions at chambers now omitted, were, at the request of members of the
bar, prepared by the judges for publication, and were printed in a pamphlet, under
the direction of Mr. Edwin F. Corey, formerly a deputy clerk of the court. The
right to republish has been purchased from him ; but the three cases, in reference to
which the reporter sought the privilege, are presented with additions and alterations
in the marginal notes, and with some authorized emendations in the opinions.

VOL. I. 40

such notice, must be allowed to him in making up the aggregate, which he may be obliged to pay.

The owner cannot be required to pay money to the claimant before it becomes payable according to the owner's contract for the erection, &c.

When an owner has contracted with another to build a house, all sub-contractors and others furnishing labor or materials to the contractor, must, *so far as they rely upon the owner or his house as security under this law*, be deemed to do so in subordination to the owner's contract, and upon the credit which the terms of such contract offer for their reliance.

On the appearance of the parties, as provided in the statute, the proceedings assume in all respects the form of an ordinary civil action, and are in all things, *after the appearance*, governed by the same rules as other civil actions brought for the enforcement of *similar rights*.

In administering this law, the court acts as a court of equity, and can adapt the judgment or decree to the special circumstances of the case; and there is nothing in those sections of the act prescribing the manner of enforcing the lien, nor in the eighth section directing the trial of the issues and the giving of judgment, which can prevent the court from controlling the proceeding, so that justice may be done to all parties affected.

The law does not in very terms *prescribe the judgment* which must be given, nor the precise form of the execution which shall be issued.

It does not follow from the statute, that there must be an absolute determination, in the *first instance*, of a sum certain, for which the claimant shall have *immediate execution*.

By the first section of the act, the *extent* of the lien is confined to the right, title, and interest of the owner, existing at the time of filing the notice; and the form of the judgment and execution will require adaptation to this limitation.

Whether costs, if recovered, are ultimately to come out of the fund in the owner's hands, or are to be paid by the owner in addition to the contract price; *quere?*

In proceedings under this law, for the enforcement and foreclosure of the lien, it is competent for the defendant either to demur, or answer the complaint filed pursuant to an order for the joining of the issues. Nothing in the act confines the issue to *facts* only.

When the contractor is himself plaintiff, and sets up his claim against the owner under a contract made with *him*, the plaintiff must show in his complaint that the owner is indebted to him; and before there can be an actual recovery of the money, it must appear that the debt has become payable.

When the proceedings are taken by a sub-contractor, laborer, or material man, it is not necessary for the claimant (plaintiff) to aver in his complaint that money was due and payable to the contractor from the owner, at the time of the *filing* of the *notice* of the plaintiff's claim; nor to aver, negatively, that the owner had *not* paid to the contractor the full contract price, at the time of the filing of such notice.

Whether any sum is due from the owner or not, at the time of *filing* the notice, moneys may become due *afterwards*, which the owner may be compelled to apply to the satisfaction of the lien.

Doughty v. Devlin.

The plaintiff should aver that the work or materials, for which he claims, were done or furnished in *conformity* with the *contract* made by the *owner* for the erection, &c., of the building, and that the money claimed is due and payable to him therefor, showing, also, the acquirement of a lien by a compliance with the statute in other particulars.

When the claimant shows, that money is due and *payable* to *him* for the work, &c., and that he has complied with the statute, he is to be deemed *prima facie* entitled to his lien, and to judgment on the foreclosure thereof.

A plaintiff is not bound in his complaint to *negative* a possible defence. It is enough that he shows a *prima facie* right to recover. And it is now sufficient for a plaintiff to aver all that he will be bound to prove on the trial.

Where a demurrer is irregularly interposed, the proper course for a party wishing to avail himself of the objection, is to treat the demurrer as a nullity, or move the court to strike it out, and not to accept and bring to argument the issue of law tendered thereby.

Whether an averment, in the words of the code, " That the complaint does not state facts sufficient to constitute a cause of action," is a specification of the ground of demurrer, pursuant to §.145 ; *quere ?*

The court will not feel bound to sustain a demurrer upon a ground not raised on the argument.

GENERAL TERM, MAY, 1852.

THIS cause came on for argument upon issue joined on a demurrer to the complaint, and by special order of the court was heard before the full bench in general term. The facts are stated in the opinion.

*Richard H. Bowne,* for the defendant (owner).

*Henry P. McGown* and *John C. Dimmick,* for the plaintiff (claimant).

BY THE COURT. WOODRUFF, J.—The defendant herein is proceeded against as owner of a certain dwelling house in the city of New York, towards the erection of which the plaintiff alleges that he has performed labor and furnished materials. The proceeding is had under the " Act for the better security of mechanics and others erecting buildings, &c., in the city and county of New York," passed July 11th, 1851. Upon the appearance of the claimant and the defendant in this court,

pursuant to a notice given, (in compliance with the 4th section of the act,) for the purpose of enforcing the lien or bringing it to a close, an order was made for the joining of issues. (Section 8 of the act, Laws of 1851, p. 954.)

The plaintiff, thereupon, complains, averring, that the defendant is owner of the lot or premises whereon, &c. That one George Smith has a contract with the defendant for the erection of the building on the premises, for the defendant. That in October last, (1851,) Smith employed the plaintiff to do the work and furnish the materials now in question, upon the said building, and upon that employment he performed such work, and furnished the materials; by means whereof Smith became indebted to him therefor to the amount of $392 92, of which $345 45 is still due and unpaid, and that no payments have been made thereon, and there are no "*off-sets*" to the same.

The complaint then avers a demand of Smith (the contractor); his refusal to pay; the filing of notice with the county clerk on the 17th December, 1851 ; service of notice to bring the lien to a close ; the appearance of the parties in court at the time designated in the last named notice; the order of the court directing issues to be joined by complaint, &c., and that the cause proceed in the same manner as other actions pending, &c., and states that this complaint is filed in obedience to that order.

To this complaint the defendant has interposed a demurrer, assigning three causes or grounds therefor.

*First.* That the complaint does not state facts sufficient to constitute a cause of action.

*Second.* That it does not aver that any sum was due from Devlin (the owner) to *Smith,* (the contractor,) at the time of the filing of the notice of the plaintiff's claim. (Section 6 of the Statute.)

*Third.* That it does not state that Devlin had not paid to Smith the full contract price at the time of the filing of such notice.

On the argument it was urged by the plaintiff's counsel,

that in proceedings to enforce such liens, no demurrer could regularly be interposed, but the defendant *must answer*.

It might be sufficient to say, that if this point be well taken, the proper course to be pursued by the plaintiff was to treat the demurrer as a nullity, or move the court to strike it out, and not to accept the issue of law tendered thereby, and bring that issue to argument. If it be a proceeding not warranted by the statute in question, it raised no issue, and the case has no proper place upon the calendar of the general term. The plaintiff should be left to his *motion* to correct the irregularity.

But I think it was competent for the defendant to demur. Section 8 of the act, in terms, directs that issue shall be joined upon the claims made, and notice of set off served, and the same shall be *governed*, tried, &c., in all respects in the same manner as upon issues joined in all other civil actions, &c.

For the joining of issues, appropriate averments are. necessary.

The issues joined may be upon the claims made, or upon the set off, or upon both. They may be issues of law or issues of fact. Nothing in the act confines the issue to *facts* only, and if not, then the pleadings may be so framed as to present *any issues* which the parties may desire to raise respecting the matters in controversy. To my mind it is plain that the legislature intended, after pointing out the mode in which a lien might be secured, and an appearance in court compelled, to provide, that on such appearance the proceeding should in all respects assume the form of an ordinary civil action, and in all things *after the appearance*, be governed by the same rules as other civil actions brought for the enforcement of *similar rights*. Reason requires that this construction should be given to this section; for obviously, if the plaintiff's complaint does not state facts sufficient to constitute a cause of action, no material issue of fact *can* be joined upon it. An answer denying the facts would not waive the defect. As in "other civil actions," advantage might be taken of it in

any subsequent stage of the proceeding. It would be idle to require the defendant to take issue upon the facts alleged, when, although true, and if admitted, they do not entitle the plaintiff to judgment.

Reason, convenience, and the terms of the statute, in my judgment, all concur in sustaining the right of the defendant to demur, if so advised.

Is the demurrer in this case well taken?

What are stated in the demurrer as the "*second*" and "*third*" causes, are not to be regarded as independent grounds of demurrer. They are merely particulars or specifications under the "*first*," which is in the words of the 6th subdivision of the 144th section of the code.

In my opinion, neither of these two particulars constitutes any valid objection to the complaint.

The "second" is, that it is not averred in the complaint that any money was due to the contractor from the defendant, (the owner,) at the *time of the filing of the notice of the plaintiff's claim.*

No such averment is necessary. The claimant has, by the very terms of the statute, a right to file the notice at *any time* (within six months) after the performance of labor, &c. (Section 6.)

And the filing of the notice gives him a lien (section 1) upon the building, &c., subject to the qualifications contained in the first section. Whether any sum is due from the owner or not, at the time of *filing* the notice, moneys may become due *afterwards*, which the owner may be compelled to apply to the satisfaction of the lien.

Even if it be conceded that the owner cannot be compelled to *pay* the claimant, *until* money becomes payable, according to the terms of the owner's contract for the erection of the building, it by no means follows that the claimant by filing the notice may not acquire a lien that shall bind the owner to pay him *when* the money does become payable. In other words, the time when the *notice* is *filed* is not the time to which the inquiry whether money is due from the owner must

relate. In every view of the construction of this statute, if at the time of the foreclosure of the lien, money is *due* from the owner and then *payable*, and the claim is established, the plaintiff will be entitled to judgment.

The " third" specification, namely, that the complaint does not state that the owner has *not* paid the *contractor*, is equally without foundation. The plaintiff is not bound to *negative* a possible defence. It is enough that he shows a *prima facie* right to recover. The statute gives him the lien, and the right to institute proceedings to test its extent, and enforce it, at any time after his work is done. If payment to the original contractor is a good defence to the owner, he must set up such payment in his answer.

It would be against all former rules to require the plaintiff to *prove* on the trial such a *negative*, and it is now sufficient for a plaintiff to aver all that he will be bound to prove on the trial.

But, although these two specifications contain no cause of demurrer, the *first* cause assigned remains in the very words of the code, viz : " That the complaint does not state facts sufficient to constitute a cause of action."

It is objected by the plaintiff, that this is *too vague and indefinite*, and that the defendant ought not to be permitted to raise any question under it.

It has been questioned whether this form of stating the ground of demurrer is a sufficient compliance with the 145th section of the code, which requires a distinct specification of the grounds of objection to the complaint. But, under the provisions of the 149th section, by which the objection that the complaint does not state facts sufficient to constitute a cause of action, may be raised at any time, it is urged with much force, that we must allow the objection to be taken here, without any other specification in the demurrer than the very language of the 6th subdivision of the 144th section, which authorizes a demurrer for that cause. (*a*)

(*a*) See *Swift* v. *Dewitt*, 3 How. 280 ; *Durkee* v. *The Saratoga and Washington Rail-Road Company*, 4 How. 226 ; *Hyde* v. *Conrad*, 3 Code R. 162 ; *Glenny* v. *Hitchins*, 4 How. 98 ; *Purdy* v. *Carpenter*, &c. 6 How. 364 ; *Grant* v. *Lasher*, 2 Code R. 2 ; *Hunter* v. *Frisbie*, 2 Code R. 59.

Whether the demurrer is in this respect defective or not, and whether if it be, the objection should not be taken by a motion to strike out, or whether on an argument of the demurrer itself, the objection that it is defective for want of specifications, may be urged, it is unnecessary in this case to decide; since, in considering the matter upon the merits, we are of opinion that the demurrer must be overruled.

In support of this ground of demurrer, it was urged by the defendant's counsel on the argument, that the complaint should show that the owner is *indebted* to the *contractor*, and that the money *has become payable* at the time of the complaint.

When the contractor is himself plaintiff, and sets up his claim against the owner, under a contract made with *him*, the plaintiff must undoubtedly show that the owner is indebted to him; and before there can be an actual recovery of the money, it must appear that the debt has become payable.

But where the claim is made by a sub-contractor or laborer, I think that a just and fair construction of the statute makes it sufficient for the plaintiff to show by his complaint, that *he* is within the provisions of the statute, *i. e.*, that in pursuance of an agreement with the contractor, he has, in conformity with the terms of the owner's contract, performed the work, &c., and that the money claimed is due and payable to *him* therefor—showing also a compliance with the statute in other particulars to acquire a lien. I think that the whole scope of the statute gives the claimant, under such averments, a *prima facie* right of action, and that section 5, though not very explicit or intelligible, must be taken to indicate that upon such *prima facie* case being stated, the owner is put to his defence. If the owner wishes to show that, by the terms of his contract with the original contractor, nothing has yet become payable, or that by reason of payments made by him before the notice of claim was filed, nothing is now due from *him*, he must set up his defence by answer. The legislature intended that, when the claimant shows that money is due and *payable* to *him* for the work, &c., and that he has complied with the statute, he

is to be deemed *prima facie* entitled to his lien, and to judgment on the foreclosure thereof.

We might stop here, and, in accordance with the views above suggested, overrule the demurrer. This would leave the main question discussed on the argument unsettled, viz.: Can the plaintiff *recover*, if neither at the time of the filing of the notice of his claim, nor at the time of the foreclosure thereof, any sum is due from the *owner to the contractor ?*

This involves the effect of payments made in good faith by the owner to the contractor, before notice of claim is filed, and the inquiry, whether the owner can, by proceedings under the statute, be compelled to pay money before it becomes payable by the terms of his contract.

Although this case does not in its present stage call for the determination of the question, we are perfectly aware, not only that this case will early require such determination, but that numerous other cases are depending in this court, which are now awaiting our view of the true construction of the statute in this particular. This occasion, therefore, on which the subject has been fully discussed, may be as fitting as any other for the expression of our opinion of the meaning of the legislature in this respect.

The first section of the act describes the persons who may have a lien—the cases in which a lien may be had—when and the manner in which it may be acquired—what rights shall be bound by the lien—and finally, it limits the extent or effect of the lien.

*1st.* One who by virtue of the owner's contract with himself, &c., *i. e.*, a contractor, and any one who in pursuance of an agreement with the contractor, &c., *i. e.*, a sub-contractor, or laborer, or material man, may have the lien.

*2d.* The labor performed or the materials furnished must be in conformity with the *terms* of the *contract* made *with the owner*, to entitle either of the persons to have a lien.

*3d.* It is *upon* filing the notice mentioned in the *sixth* section of the act, with the county clerk, and not *until* then, and *by* filing such notice, that the lien is acquired.

*4th.* The right, title and interest of the owner existing at the time of the filing of such notice is made subject to the lien. .

And *5th.* The lien is made subject to this important limitation, viz. : that the owner shall not be obliged to pay *for, or on account of such house,* &c., in consideration of all the liens authorized by this act, any greater sum or amount than the price stipulated and agreed to be paid *therefor* in and by his *contract.*

The question discussed by the counsel appertains to the proper meaning of this last named limitation.   On the one hand the plaintiff's counsel insists, that although the owner may have made payments in good faith, as they became payable, according to the very terms of his contract, before any notice of claim is filed, he is nevertheless bound to pay in discharge of liens which may be subsequently created, the whole amount of the contract price.   On the other hand, the defendant's counsel insists that the owner, acting in good faith, and in exact conformity. with his contract, can *in no event* be compelled to pay a greater sum than he has by his contract agreed to pay.

In my opinion, the defendant's counsel is right in this view of the construction of the limitation above referred to ; and I regard this limitation as a fundamental and absolute qualification of the whole statute, which is to govern the construction and effect of every other part of it.   It must govern all the rest, because it is this section that declares the rights of the parties, and the residue of the statute is framed merely to carry into effect or enforce those rights.

The reasons which constrain me to hold that the owner cannot (provided he acts in all things in good faith and according to the very terms of his contract) be compelled, by any proceeding under this act, to pay a greater sum than he agreed to pay, are,

*First.* It would be grossly unjust to compel him to pay more than he contracted to pay.   We should be. slow to believe that the legislature intended to do injustice, and if there be room

for doubt, we should give a just and equitable construction to the language they have employed.

That the construction contended for would work injustice, appears, 1st. Because the whole work may be done within six months after its commencement, and no notice of claim be at that time filed. In such case, the owner will have paid all that he is by the contract bound to pay, and justice both to him and the contractor requires, that the work being done, the owner should be permitted to pay for it.

2d. The contractor can sue the owner, and *compel* him to make the payments as stipulated in the contract, and if no notices of claim are then filed, the owner is utterly without defence to such suit; and yet the construction contended for would compel him to pay money a second time, which, by process of law, he had once been forced to pay.

3d. It is not in the power of the owner to ascertain, before notice of claim is filed, whether the contractor has paid his laborers, sub-contractors, or material men, or not. It would, therefore, be the harshest injustice to force him to pay what his contract *binds* him to pay, but at the *peril* of being afterwards called on to pay again, to parties whom he did not know, and by no reasonable diligence could discover.

Obviously, when the contractor brings brick, or stone, or timber, or paint, or fixtures, to the premises, the owner has no means of discovering when or from whom they were purchased, nor whether they are paid for.

4th. Such a construction would expose an owner to gross wrong, through collusion between the contractor and the laborers or material men, and furnish a bribe to dishonesty and fraud.

For example, the *contractor* (performing the contract in all things on his part) collusively suffers the laborers and material men to remain unpaid until he has finished the house; and they collusively suffer such contractor to collect the money due, (it may be by legal process,) without filing any notice, and for the very purpose of defrauding the owner.

When mere *silence* is all that is necessary to the consumma-

tion of the fraud, it will rarely if ever be possible to prove the collusion, and I see no possible protection to the owner against its consequences.

*Second.*—The *second* reason for the views I entertain of the limitation in the first section is, that the very *language* of the section, in my judgment, imports, that the *contract* made by the *owner* is to govern the rights of all the parties, and makes the lien subordinate to its provisions.

*1st.* It requires that the labor, &c., for the value of which the lien is to be acquired, shall be done and furnished " in conformity with" such contract with the owner. Thus showing that the legislature intended to secure to the owner his right to insist upon the very terms of his contract.

*2d.* In terms, " *all* the liens *authorized* shall not oblige the owner to pay a greater sum than is stipulated in his contract." Observe, it is not all the liens CREATED, but all the liens " *authorized.*" What then are all the liens *authorized* by the act? Plainly, a lien by the contractor for the *whole* amount of the work, &c., at the contract price ; and *also* liens in favor of each sub-contractor, laborer and material man, for the amount of their several contributions thereto. In the aggregate, such liens amount to double the contract price.

But this the owner " shall not be obliged to pay." This shows, again, the subordination of the liens to the *terms* of the contract.

*3d.* The language is, that the owner shall not be obliged to pay " for or *on account of such house,*" &c., any greater sum or *amount* than the price stipulated in and by his contract. Now, if after the house is finished and *paid for* by the owner, according to his contract, and without any notice of claim being filed, a laborer or material man may file such notice, have a lien, and compel a further payment, the owner is " *obliged* to pay *for his house*" in consideration of such lien, a greater *amount* than he contracted to pay.

*Third.*—It is argued by the plaintiff, that the language of the limitation in question imports, that however much the owner may have already paid, he may still, " in consideration

of *liens*," *i. e.*, *upon* and in *discharge* of liens, be obliged to pay an amount equal to the contract price.

This argument is partially answered by the suggestion lastly above made. The amount he can be compelled to pay for *his house* is limited by his contract; and all the liens *authorized*, whether they are in fact *created* by *filing* a notice or not, shall not oblige him to pay more.

Now every payment which the owner makes in pursuance of his contract is, in every just sense, a discharge of a lien *authorized* by the act; for such lien in favor of the contractor is *authorized* whether the contractor takes steps to create the actual lien or not. In other words, the act *authorizes* liens in favor of all who have a right to claim payments for labor or materials. All payments, therefore, made in discharge of a claim for which a lien is *authorized*, are a discharge, *pro tanto*, of a lien or liens *authorized* by this act.

The language, "all the liens authorized by this act," means, therefore, precisely the same as *the claims of all parties who are authorized by this act to acquire liens ;* and the limitation then is—the owner shall not be obliged to pay for his house, in consideration of the claims of all parties authorized to acquire liens, a greater amount than the price stipulated in the contract. And it necessarily follows, that what in good faith and according to the terms of the contract, is paid on one claim, must be taken into view in determining how much more he can be compelled to pay.

*Fourth.*—The statute would operate unequally if any other construction were to be given to it, and justice to the owner would be made to depend, not upon *his* good faith or fidelity to his engagements, but upon the will of the contractor.

Thus, it was conceded by the plaintiff's counsel on the argument, and *must* be conceded, that if the *contractor* file his claim for the whole contract price, the owner might then pay it, the contractor could then collect it, compelling its payment by the proceedings prescribed in the statute, with all the costs of suit; and if other claims are *thereafter* filed, they could collect *nothing*. But if the contractor does not file such notice, or

if the owner consent to pay him without being subjected to prosecution and to *costs* of suit, the owner, it is urged, may be compelled to pay, a second time, a like amount to the various laborers, material men, &c.

I cannot believe that the legislature intended that the amount of the owner's liability should depend upon the question, whether the contractor chose to file his notice, nor that they designed to compel the owner to litigate with the contractor for his own protection, when both are able and willing to pay according to his contract.

*Fifth.*—One other consideration tends to the same view of the meaning of the statute; it is, the inconvenience resulting from the construction contended for.

This, though by no means conclusive against the plainly expressed will of the legislature, is, nevertheless, to be considered, when a doubt exists respecting the import of the language employed, to express that will.

I assume, then, that the legislature did *not* intend that an owner should not build, without the hazard of paying twice for his building, nor that he should *at all events* pay twice for his building. There is no apparent reason for assuming that the law was framed in any such spirit of hostility to owners of land, who desire to improve it.

But, under the construction contended for, no owner can *safely* make a *contract* for the erection of a building, and agree to pay for it to the contractor by instalments or at a specified time. If he improve his lots at all, he *must*, in order to be safe, pay every laborer and every material man *himself*, or otherwise run the *hazard* of being forced to pay a second time.

I cannot believe the legislature intended so far to interfere with the right of parties to contract with each other as they may think proper on such subjects, and to enjoy the benefits of such contracts, or to throw such an impediment in the way of *builders* who desire to contract for employment in the regular prosecution of their business; nor do I think they intended, by thus virtually compelling an owner to pay all

moneys directly to the laborer, and to the material men, to do away with all building by *contract*, and compel all improvement of lots to be done and paid for by the owner by " day's work."

Such·an interference would, I am quite sure, prove in the end as prejudicial to mechanics and laborers, by discouraging improvements, as it would be inconvenient and hazardous to the owner.

I can well imagine that, if the legislature wished to drive every builder, who has not already amassed a fortune, from the market, and give a monopoly of all the building contracts to wealthy men, who, by their large means, could give the owner assured guaranty against loss from liens of sub-contractors and laborers, they might pass a law having the construction contended for in this case. I do not yet believe the legisture have any such intention.

The foregoing are some of the considerations which have led me to the conclusion, that the contract of the owner is conclusive as to the amount which he can be compelled to pay, if he have observed good faith and performed his contract according to its terms ; and, therefore, that he cannot be compelled to pay in any event more than the contract price.

I regard this proposition as lying at the foundation of the whole proceeding, and as declaratory of, and controlling the rights of the parties. And, therefore, in applying the subsequent provisions of the statute, which are merely designed to secure and enforce those rights, we are to keep the provisions of this first section always in view, and mould or adapt the remedy, so far as it is entrusted to us, so as to effectuate the object, and if possible harmonize the whole.

*Sixth.*—But it is insisted, that although it may be that prior payments made in conformity with the contract, in good faith, before notice of claim is filed, are to be allowed to the owner in making up the aggregate which he may be obliged to pay, still the party filing the lien is not obliged to *wait* for his

money *until* the payments become due, according to the owner's contract.

That is, when *his* work is done, and he has filed his notice of claim, he can immediately proceed to foreclose the lien, and compel payment without regard to the terms of the owner's contract for the erection of his house.

To assent to this would be in effect to deny all that has been said above, upon the construction of the first section of the act.

*For*, 1*st.*—*Non constat*, that a future sum stipulated to be paid by the owner will become payable *at all* to the contractor; and if not, then to require him to pay it *in advance* to a material man who files a claim, would be to compel the owner to pay, by reason of the lien, more money than by the terms of the contract he is bound to pay.

*And*, 2*d.*—This last proposition would lead to this *unjust*, not to say absurd result: A contractor who had received his payments according to the full terms of the owner's contract, so far as the work has progressed, might, by leaving material men and laborers unpaid, enable *them* to proceed under this statute and compel the owner to pay to them the whole sum stipulated in the contract remaining unpaid, although it is not earned. This being done, the contractor abandons the contract, and the owner has been forced to pay the whole contract price, though his house is but half finished. Surely the legislature intended no such injustice. Since six months are allowed after the work, &c., is done, &c., within which notices of claims may be filed, the only alternative presented by the construction of this statute contended for by the plaintiff, is this:

The owner can never safely contract with another for the erection of a house, or he *must* so contract that he shall have six months after the house is completely finished before *any sum* shall become due to the contractor.

I cannot believe that it was intended that the owner should in no case pay anything on his house until six months after its completion, except at the peril of paying it a second time.

Nor that when terms of credit or payments by instalments, as the work progresses, are stipulated in the owner's favor, he shall be deprived of the benefit of such stipulations, without any fault or bad faith on his part. Nor that the legislature were blind to the great advantage which the *contractor* derives from prompt payments by the owner, to enable the former to buy materials on the *best terms*, for cash in hand.

And I may add, that it is no violent or unfair presumption, that when an owner has contracted with another to build a house, all sub-contractors and others, furnishing labor and materials to the contractor, do so, with reference to such contract, in subordination to its provisions and to the rights of the respective parties thereto, so far as they act in any reliance upon the owner or his house as a security under this law.

Nor is it, therefore, any hardship, to hold them constructively notified of its provisions, or bound to take notice at their peril. They know they are not dealing with the owner; they know, or ought to know, when and upon what contingencies the owner will be bound to pay. And if they labor or furnish materials, in any sense, upon the credit of the owner or his house, they should do so upon the credit which the terms of the contract offer for their reliance.

*7th. Lastly.*—It is supposed that the provisions, regulating the foreclosure of the lien, conflict with the views above suggested.

Section 4 of the statute provides that the claimant, after his labor is done, &c., may proceed to enforce his lien, or bring it to a close. And subdivision 4 of section 11, authorizes the owner to give him notice to take such proceedings, and provides that, if he does not proceed on or before the day specified in such notice, or within *thirty* days thereafter, his lien shall cease.

It is now said, that if the claimant cannot enforce payment from the owner *before* the payments are due by the terms of the owner's contract, it will be in the power of the owner, by giving him the notice *requiring* him to proceed by a certain day, &c., to defeat his lien; for if he *do* proceed, judgment

must, according to the foregoing views, be rendered against him; if he do *not* proceed, his lien is gone by lapse of *time*.

Again, by subdivision 3, of section 11, if the claimant (whether thereto required by the owner or *not*) do not take steps to enforce his lien within one year, and give notice thereof to the county clerk, the lien is discharged.

It is now urged, that, upon the views hereinbefore suggested, if it should so happen that no payment becomes due from the owner, according to the terms of his contract, until more than one year from the filing of the notice of claim, the claimant must be defeated, and his lien be lost; for if he commence proceedings, judgment will be rendered against him because nothing yet has become payable by the owner; and if he do *not* commence proceedings, his lien is discharged by the lapse of the year.

If I was satisfied that these difficulties are insurmountable, I should be greatly perplexed with the doubt, whether we are compelled by the statute to do injustice to the owner on the one hand, or whether on the other we must suffer the beneficial purposes of the statute to fail by reason of incongruity in the provisions intended to carry it into effect. But although the provisions of the statute are crude, and are evidently drawn without a very clear notion of what the language, employed to regulate the manner of carrying the statute into execution, has heretofore been understood to mean, I apprehend there is no real difficulty in the case.

The supposed embarrassment arises from the idea, that if the foregoing construction prevails, a judgment must be rendered against the claimant, which shall operate as a "discharge" of the lien, according to section 9, in all cases in which the owner's resistance is founded upon the mere fact that the money has not *yet become* payable, and that the court, acting as a court of equity, *cannot* protect the lien and enforce it, so as to make it effectual, to reach the owner and his money when it shall become payable. The words of the 8th section, that the issue shall be joined, and "be governed, tried, and the judgment thereon enforced, in all respects, in

the same manner as upon issues joined and judgments rendered in all other civil actions for the recovery of moneys in said court," do not necessarily exclude all consideration by the court of the nature of the proceeding. The section does not in very terms *prescribe* the *judgment* which must be given, nor the precise *form* of the execution which shall be issued.

It means that the issues, whether of fact or law, shall be tried as other issues of fact or law are tried in actions for the recovery of money. And that when the facts are found, or issues of law are determined, judgment shall be given according to the *rights* of the parties. And being so rendered, it shall be *enforced* as judgments rendered in all other civil actions for the recovery of moneys are enforced. The statute does not declare *what* the *judgment shall be.* That is left to the court to determine when the rights of the parties are fully disclosed. And it does not follow from the statute, that there must be an absolute determination in the *first instance* of a *sum certain* for which the claimant shall have *immediate execution.* On the contrary, the statute clearly contemplates the existence of many claimants and many liens, the aggregate of which may exceed the whole contract price. And an adjustment or *pro rata* distribution may often be necessary according to the amount of each. So that although each may be established as liens, and the amount of each may be fixed by a trial, further proceedings may be necessary to apportion the amount to be paid by the owner before execution can issue, and when all questions of this sort are settled, and the case is ripe for final judgment and execution, it can be given.

The necessity that the court should adapt the judgment to the special circumstances, will appear if we suppose many liens obtained by notices filed, (having no priority in time or otherwise,) which in the aggregate shall exceed the amount due, or thereafter to become due from the owner; or, suppose many notices are filed, and the claimant, whose notice is *last* filed, succeeds in bringing his claim *first* to trial; or, suppose, after several liens are obtained by laborers and material men, the

contractor files his claim to the whole contract price, and obtains the *first* trial on a foreclosure ; or, again, suppose the contractor files the first notice of claim, and afterwards and before his claim is foreclosed, his laborers and material men, whose claims, though second to his in *time*, are *prior* in *equity*, acquire liens.

In administering this law, we are acting peculiarly as a court of equity. The statute is itself ostensibly founded in equity. Courts of equity have always had a peculiar facility in adapting their decrees to the special circumstances of the case before them. And there is nothing in the 8th section of this act to prevent our controlling the proceeding so that justice may be done.

The judgment is designed to *enforce* the lien. This proceeding is called a proceeding to enforce the lien. (See. 4 and sec. 11, sub. 3 and 5.) The execution to be issued is for the *enforcement* of the claim. (Sec. 7.) By the first section the *extent* of the lien is confined to the right, title and interest of the owner existing at the time of filing the notice, and the form of the judgment and execution will require adaptation to this limitation. And when the legislature in the act in question have likened the proceedings herein to proceedings upon issues joined and judgments rendered in other civil actions for the recovery of moneys, they must be deemed to mean civil actions for the recovery of money secured by liens upon property, in some sort resembling the liens contemplated by this statute.

It is not necessary to decide in this case upon the ultimate form of proceeding in rendering judgment in these cases. What I have suggested above is in answer to a supposed difficulty in executing the statute so as to do justice between *all parties*. And the court, therefore, reserve to themselves the question : What shall be the judgment given, and how far they will control it to prevent injustice to the owner, on the one hand, or a failure of justice to the claimants, on the other ? For the present, my conclusions on this part of the case are—

*First.* That the owner cannot be compelled to pay (including all voluntary payments made in good faith, according to

the terms of his contract, before the notice of claim is filed) any greater amount than the contract price.

And *second*. That he cannot be required to pay money to the claimant before it becomes payable by the provisions of the contract.

Whether, when the defence made by the owner is, that the money has not yet become payable by the provisions of his contract, the court shall save the claimant's rights by staying the proceedings; whether, when the *owner* himself compels the claimant to proceed, by giving him notice to enforce his lien, he shall not be thereby deemed to waive the term of credit which by the contract he might claim; and whether the *time* at which the owner shall be compelled to *pay* the claim, after its amount is settled and the lien established, shall be regulated by the court in the judgment itself, or by an equitable control over the judgment in accordance with the suggestions above intimated, we do not intend, now, unqualifiedly to decide. Enough has been said on this branch of the case to show that when a sub-contractor, laborer, or material man, is plaintiff, the complaint need not aver that the money has in fact become payable according to the provisions of the owner's contract; and that this demurrer must be overruled.

I do not, however, deem it improper to suggest,' that, by the terms of the first section, it would seem that no person is entitled to a lien, and of course, not to judgment, unless the labor performed or materials furnished are "in conformity with the contract with the owner." There is no averment to this effect, in respect to the work and materials mentioned in this complaint. Whether a plaintiff can show a *prima facie* right to proceed against the owner at all, without such an allegation, is worthy of consideration.

But this was not urged by the defendant's counsel as a ground of demurrer; and whatever may be our views of the necessity of such an averment, we do not feel called upon to sustain the demurrer upon a ground not insisted on.

Perhaps, to avoid future question, the plaintiff's counsel may deem it advisable to amend in this particular.

Doughty v. Devlin.

The complaint in this case does not state *when* the contract was made by the owner (the defendant) for the erection of the buildings. But I come to the conclusions above stated, respecting the proper construction of this statute, with the more satisfaction, because if it is at all applicable to labor performed in pursuance of contracts made before the act took effect, any other construction must, I think, have rendered the act unconstitutional and void as respects such contracts, as most unjustly altering them, to the prejudice of the owner, and so impairing the obligation of contracts.

The demurrer must be overruled; but under the circumstances of doubt and uncertainty regarding the true construction of the act, leave must be given to the defendant to answer, and the costs of the demurrer should abide the event of the suit.

Whether costs, if recovered, are ultimately to come out of the fund in the owner's hands, or are to be paid by the owner, in addition to the contract price; must remain with these inquiries, viz.: What defence, good against the contractor, will avail the owner as against the claimant under the lien? Whether there are any priorities among various claimants filing notices? and how affected by the order of time of filing? and how protected?

Whether the contractor is a proper or necessary party to the suit, in order to the full determination of the matter in controversy, so as to make the payment of the judgment available to the owner against him? and numerous other questions which the discussion has shown must arise, I leave for future consideration. And I may add the expression of a hope that some legislative action may yet be had to render the disposition of these questions less difficult, and at the same time protect the rights of all parties.

Judgment for the plaintiff on the demurrer, with leave to the defendant to withdraw the demurrer and to answer. Costs to abide the event.